3:22-cv-1028-KAD

---

IN THE UNITED STATES DISTRICT COURT
for the DISTRICT OF CONNECTICUT

---

IN RE:  HO WAN KWOK, *ET AL.*, DEBTORS

---

HO WAN KWOK, APPELLANT,

v.

LUC A. DESPINS, CHAPTER 11 TRUSTEE, APPELLEE.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF CONNECTICUT

Bankruptcy Case No. 22-50073-JAM

---

**BRIEF FOR APPELLEE
LUC A. DESPINS, CHAPTER 11 TRUSTEE**

---

DOUGLAS S. SKALKA, ESQ.
PATRICK R. LINSEY, ESQ.
Neubert, Pepe, & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Direct: (203) 781-2847
Fax:     (203) 821-2008
dskalka@npmlaw.com
plinsey@npmlaw.com

*and*

NICHOLAS A. BASSETT (*pro hac vice*)
Paul Hastings LLP
2050 M Street NW
Washington, D.C., 20036
Tel: (202) 551-1902
nicholasbassett@paulhastings.com

  *and*

LUC A. DESPINS (*pro hac vice*)
AVRAM E. LUFT (*pro hac vice*)
Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6079
lucdespins@paulhastings.com
aviluft@paulhastings.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

COUNTER STATEMENT OF ISSUES PRESENTED ............................................ 1

STATEMENT OF THE CASE ........................................................................ 2

    I.   Case Background ...................................................................... 2

    II.  Initial Governance Motion .................................................. 5

    III. UBS Litigation ....................................................................... 6

    IV. Revised Proposed Orders on Governance Motion ............................. 7

    V.  Hearing on Governance Motion ........................................... 8

    VI. Order Granting Governance Motion .................................. 10

    VII. Privileges Motion and Privileges Order ............................ 11

    VIII.   Motion for Stay Pending Appeal ................................. 13

SUMMARY OF ARGUMENT ....................................................................... 13

ARGUMENT ............................................................................................ 15

    I.   Relief Granted in Governance Order Aligns With, and Was
        Subsumed in, Relief Sought in Governance Motion and Did Not
        Prejudice Debtor ..................................................................... 15

    II.  Alternatively, Bankruptcy Court Had Discretion to Grant
        Governance Order as Ruling on Oral Motion at a Recorded Hearing ....... 19

    III. Bankruptcy Court Did Not Err in Directing Debtor to Deliver
        Turnover Letter, as Trustee Controls Privileges in UBS Litigation
        under U.S. and English Law ...................................................... 22

    A.  U.S Law Grants Trustee Control of Attorney-Client Privilege in
        UBS Litigation ....................................................................... 22

B.  Turnover Letter Does Not Waive Privilege and is Consistent with
English Law ................................................................................................27

STATEMENT REGARDING ORAL ARGUMENT ..............................................32

CONCLUSION ......................................................................................................33

CERTIFICATE OF COMPLIANCE .....................................................................34

CERTIFICATION OF SERVICE ..........................................................................35

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Ampal-Am. Israel Corp.*,
    562 B.R. 601 (Bankr. S.D.N.Y. 2017)................................................................32

*In re Arcapita Bank B.S.C.(c)*,
    575 B.R. 229 (Bankr. S.D.N.Y. 2017), *aff'd sub nom. In re
    Arcapita Bank B.S.C.(C)*, 640 B.R. 604 (S.D.N.Y. 2022)...................................31

*In re Bame*,
    251 B.R. 367 (Bankr. D. Minn. 2000)...........................................................24, 25

*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343 (1985)...............................................................................23, 24, 26, 27

*In re Dana Corp.*,
    574 F.3d 129 (2d Cir. 2009) .............................................................................1

*Feldberg v. Quechee Lakes Corp.*,
    463 F.3d 195 (2d Cir. 2006) ...............................................................................17

*In re Foster*,
    188 F.3d 1259 (10th Cir. 1999) ..........................................................................24

*In re Hellas Telecomms. (Luxembourg) II SCA*,
    555 B.R. 323 (Bankr. S.D.N.Y. 2016).................................................................30

*Hinz v. Neuroscience, Inc.*,
    538 F.3d 979 (8th Cir. 2008) ...............................................................................17

*In re Horvath*,
    No. 13-34137 MAW,
    2015 WL 2195060 (Bankr. N.D. Ohio May 7, 2015) ........................................25

*Kim v. Co-op. Centrale Raiffeisen-Boerenleenbank*,
    364 F. Supp. 2d 346 (S.D.N.Y. 2005) ................................................................30

*Kwok Ho Wan & Ors v UBS*,
    Cl-2020-000345 ..................................................................................................6

*Kwok Ho Wan v. UBS AG*,
   Claim No. CL-2020-000345 ...............................................................................13

*Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*,
   Index No. 652077/2017 (N.Y. Sup. Feb. 9, 2022) ...............................................2

*In re Salvatore*,
   586 B.R. 371 (Bankr. D. Conn. 2018) ................................................................17

*In re Sandra Cotton, Inc.*,
   99 B.R. 197 (W.D.N.Y. 1989), *aff'd sub nom. Bank of New York v.
   Cotton*, 909 F.2d 1474 (2d Cir. 1990) ...........................................................20, 21

*Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping*,
   603 F. Supp. 801 (S.D.N.Y. 1985) .....................................................................30

*In re Sims*,
   534 F.3d 117 (2d Cir. 2008) .................................................................................2

*In re Sterling*,
   737 F. App'x 52 (2d Cir. 2018) .............................................................................1

*United States v. Vulpis*,
   961 F.2d 368 (2d Cir. 1992) ...............................................................................20

*Yates v. Delano Retail Partners, LLC*,
   No. C 10-3073 CW, 2012 WL 2563850 (N.D. Cal. June 28, 2012) .................17

**Foreign Cases**

*Avonwick Holdings Limited v. Shlosberg*,
   [2016] EWCA (Civ) 1138...............................................................................28, 29

*Leeds v. Lemos*,
   [2017] EWHC 1825 (Ch), (Chancery Division), 2017......................................29

**Statutes**

11 U.S.C.
  § 105....................................................................................................................5
  § 363.................................................................................................................3, 5
  § 521.................................................................................................................23
  § 541..............................................................................................................5, 32
  § 1104(d)...........................................................................................................4
  § 1106................................................................................................................4
  § 1108................................................................................................................5

28 U.S.C.A. § 1334(e)........................................................................................31

**Other Authorities**

Bankruptcy Rule 2004 ...................................................................................11, 12

Fed. R. Civ. P.
  R. 7(b) ...................................................................................16, 17, 19, 20
  R. 44.1 .............................................................................................................30
  R. 9013 .....................................................................................16, 17, 19

Insolvency Act 1986 § 311(1)............................................................................29

Appellee Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case (the "Chapter 11 Case") of Ho Wan Kwok (the "Debtor") respectfully submits this brief in response to the opening brief submitted by the Debtor [ECF No. 19] (the "Opening Brief"), seeking reversal of the order (the "Governance Order") of the United States Bankruptcy Court, District of Connecticut (Manning, J.) (the "Bankruptcy Court") confirming that the Trustee holds all of the Debtor's economic and corporate governance rights in debtor-controlled entities, but seeking reversal solely of paragraph 3(b) and Exhibit B of the Governance Order directing the Debtor to deliver the Harcus Parker Letter (as defined below) to the law firm of Harcus Parker Limited (such relief the "Turnover Relief").

## COUNTER STATEMENT OF ISSUES PRESENTED

Did the Bankruptcy Court commit a reversible error when it granted the Turnover Relief?

## STANDARD OF REVIEW

The applicable standard of appellate review is abuse of discretion. *See In re Sterling*, 737 F. App'x 52, 53 (2d Cir. 2018) ("Discretionary rulings of a bankruptcy court are reviewed for abuse of discretion."); *In re Dana Corp.*, 574 F.3d 129, 145 (2d Cir. 2009) ("An abuse of discretion may consist of an error of law or a clearly erroneous finding of fact, or a decision that, though not necessarily

1

the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions.") (internal citations and quotations omitted); *In re Sims*, 534 F.3d 117, 131–32 (2d Cir. 2008) ("a district court's finding that a party has waived a privilege is reviewed under the abuse-of-discretion standard") (citing *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987)).

## STATEMENT OF THE CASE

### I.    Case Background

Prior to the filing of the Chapter 11 Case, the Debtor was embroiled in years of civil litigation commenced by Pacific Alliance Asia Opportunity Fund L.P. ("PAX") in the New York Supreme Court (the "State Court"), which litigation resulted in (i) a judgment against the Debtor in excess of $116 million on February 3, 2021[1] and (ii) the State Court issuing an order dated February 8, 2022 (the "Contempt Decision") holding the Debtor in contempt for violating court orders and imposing a fine in the amount of $134 million.[2]   As the presiding State Court judge, Justice Ostrager, explained in the Contempt Decision, the Debtor "is a self-declared multi-billionaire" who "secreted his assets in a maze of corporate entities and with family members" attempting to "avoid and deceive his creditors" in a

---

[1]    The Debtor has appealed that judgment.

[2]    *See* Debtor's App. (defined below) A-177, 186, Decision & Order on Motion, *Pacific Alliance Asia Opportunity Fund L.P. v. Ho Wan Kwok*, Index No. 652077/2017 (N.Y. Sup. Ct., Feb. 9, 2022) NYSCEF Doc. No. 1181.

2

scheme that "has enabled [the Debtor] to assert that he has no assets despite his lavish lifestyle."[3]  This is evidenced by, among other things, (i) the Debtor's "dominion and control"[4] over a 150-foot yacht, the *Lady May*, that he claims is owned by a company owned by his daughter, (ii) the Debtor's multi-million dollar residence in Greenwich, Connecticut, which residence Debtor alleges is owned by a company owned by his wife, and (iii) a penthouse apartment at the Sherry-Netherland Hotel on Fifth Avenue in Manhattan, New York, to which Debtor has access, but which he claims is held in trust for the benefit of a company owned by his son. There are several other assets connected to the Debtor that are the subject of the Trustee's ongoing investigation.

Shortly after the issuance of the Contempt Decision, on February 15, 2022, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the Bankruptcy Court.

On March 19, 2022, the United States Trustee moved for an order directing the appointment of an examiner or, in the alternative, a chapter 11 trustee.  Appendix of Appellee (the "Trustee's App.") A-0001 (Bankr. Dkt. No. 102; the "Chapter 11 Trustee Appointment Motion").[5]  On April 6, 2022, PAX filed a motion to

---

[3]   *Id.* at A-177.

[4]   *Id.* at A-178.

[5]   Citations to the Trustee's App. are to *Appendix of Appellee Luc A. Despins, as Chapter 11 Trustee*, which is attached as Appendix 1 to this brief.

dismiss the chapter 11 case or, in the alternative, a partial joinder to the Chapter 11

Trustee Appointment Motion with respect to the relief of the appointment of a

chapter 11 trustee.  Trustee's App. A-274 (Bankr. Dkt. No. 183.)

On June 15, 2022, the Bankruptcy Court entered an order directing the

United States Trustee to appoint a trustee in the Chapter 11 Case. Trustee's App.

A-320 (Bankr. Dkt. No. 465; the "Trustee Order").   In the Trustee Order, the

Bankruptcy Court highlighted the Trustee's ability to "use independent judgment

and good management to direct the affairs of the estate to attempt to satisfy the

claims of creditors" and to "optimize recovery for the creditors and the estate" by,

among other things, investigating "the Debtor's assets, liabilities, and financial af-

fairs."  Trustee's App. A-337.  The Trustee Order instructed the Trustee to perform

"all of the duties set forth in 11 U.S.C. § 1106." *Id.*

On July 7, 2022, the United States Trustee filed the notice of appointment of

Luc A. Despins as the chapter 11 trustee in the Chapter 11 Case and an application

for approval of the appointment of Luc A. Despins pursuant to section 1104(d) of

the Bankruptcy Code.  Trustee's App. A-342 (Bankr. Dkt. No. 515.).  On July 8,

2022, the Bankruptcy Court entered an order (the "Appointment Order") approving

the appointment of Luc A. Despins as the Trustee in the Chapter 11 Case.  Trus-

tee's App. A-363 (Bankr. Dkt. No. 523.)

## II.     Initial Governance Motion

From the outset of his appointment, the Trustee was concerned that the Debtor's demonstrated and extensive history of defying court orders and engaging in efforts to evade his creditors would create an obstacle to the Trustee's ability to effectively fulfill his duties with respect to the management and control of the Debtor's assets and affairs.  Accordingly, on July 23, 2022, the Trustee filed his *Motion of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 363, 541, 1108, and 105, (A) Confirming that Chapter 11 Trustee Holds All of Debtor's Economic Rights in Debtor-Controlled Entities, (B) Authorizing Chapter 11 Trustee to Act in Any Foreign Country on Behalf of the Estate, and Granting Related Relief.*  Appendix of Appellant (the "Debtor's App.") A-161[6] (Bankr. Dkt. No. 598; the "Initial Governance Motion").[7]  In the motion, the Trustee sought, among other things, confirmation that (i) the Trustee holds all of the Debtor's economic and governance rights and (ii) the Debtor may not interfere with, hinder, or delay the Trustee's exercise of those economic and governance rights with respect to the entities under the Debtor's control or the Trustee's authority as the Debtor's foreign representative.  The Initial Governance Motion

---

[6]     Citations to the Debtor's App. are to *Appellant Ho Wan Kwok's Appendix* [ECF No. 19-1].

[7]     The Initial Motion, together with, as applicable, the Initial Revised Proposed Order and the Further Revised Proposed Order (each as defined below) shall be referred to as the "Governance Motion."

5

explicitly stated that the motion was motivated by, among other things, the need "to support the Trustee's investigation, collection, and recovery of other Estate assets that may be located in foreign jurisdictions."  Debtor's App. A-162.

On July 29, 2022, the Debtor filed his response in opposition to the Initial Governance Motion.  Debtor's App. A-191 (Bankr. Dkt. No. 643.)

## III.  UBS Litigation

One of the Debtor's significant known assets is, if meritorious, the litigation claim he has asserted against UBS AG in a litigation pending in the United Kingdom.[8]  Specifically, prior to the Petition Date, in September 2020, the Debtor and two other plaintiffs the Debtor controlled commenced an action against UBS AG seeking a recovery of approximately $495 million (the "UBS Litigation").  The Debtor listed the UBS Litigation as an asset of his in his *Declaration of Mr. Ho Wan Kwok in Support of the Chapter 11 case and Certain Motions*.  Trustee's App. A-179–80 (Bankr. Dkt. No. 107; the "Debtor's Declaration").

The Trustee's responsibility to identify, manage, and safeguard assets of the estate require that he have the exclusive authority and ability to manage the UBS Litigation and direct counsel in that litigation.  In July 2022, the Trustee therefore reached out to Harcus Parker Limited ("UK Counsel"), the London-based law firm

---

[8]   *See* Trustee's App. A-609, Particulars of Claim, *Kwok Ho Wan & Ors v UBS*, Cl-2020-000345, High Court of Justice of England and Wales Queen's Bench Division Commercial Court.

that had represented the Debtor in the UBS Litigation, requesting access to case files and information on an informal basis.  The Trustee's efforts in this regard were not successful.

## IV.   Revised Proposed Orders on Governance Motion

On July 31, 2022, the Trustee submitted a revised proposed order, Debtor's App. A-199 (Bankr. Dkt. No. 645; the "<u>Initial Revised Proposed Order</u>"), on the Initial Governance Motion.  Among other things, under the Initial Revised Proposed Order, the Bankruptcy Court would direct the Debtor to (i) provide the Trustee with all books, documents, and records relating to all property of the estate and, (ii) specific to the UBS Litigation, send a letter (the "<u>Turnover Letter</u>") to UK Counsel (in the form attached as Exhibit B to the Initial Revised Proposed Order), directing UK Counsel to turn over to the Trustee all materials relating to the UBS Litigation, including UK Counsel's case file.

At the hearing on August 1, 2022 (the "<u>August 1 Hearing</u>"), the Debtor objected that he needed additional time to review and object to the Initial Revised Proposed Order because the Turnover Letter had not been sought in the Initial Governance Motion.  The Trustee did not oppose this request and, critically, the Bankruptcy Court granted the Debtor's request, adjourning the matter to August 4, 2022 to give the Debtor additional time to review and object to the proposed order.

On August 2, 2022, the Trustee filed a further revised proposed order, Debtor's App. A-381 (Bankr. Dkt. No. 671; the "Further Revised Proposed Order," and, together with the Initial Revised Proposed Order, the "Revised Proposed Orders"), with some additional minor changes that had been discussed at the August 1, 2022 hearing.

On August 4, 2022, the Debtor filed his substantive objection to Initial Revised Proposed Order, Debtor's App. A-418 (Bankr. Dkt. No. 678), and the Trustee filed his reply, Debtor's App. A-605 (Bankr. Dkt. No. 679).

## V.   Hearing on Governance Motion

On August 4, 2022, the Bankruptcy Court held a hearing on the Governance Motion (the "August 4 Hearing").  Much of the Debtor's focus, both in his objection and in the comments of his counsel at the hearing, related to the language in the Initial Revised Proposed Order that would require him to send the Turnover Letter to UK Counsel.  In particular, the Debtor took the position that it was improper—and a potential violation of United Kingdom privilege law—to compel the Debtor to send a communication that would result in the "waiver" of the Debtor's privileges.  Debtor's App. A-724, 726 (Aug. 4 Hearing Tr. at 10:12-15, 12:16-22).

Addressing the Debtor's arguments, the Bankruptcy Court made clear that, with respect to the Governance Motion, the Trustee was merely stepping into the

shoes of the Debtor's privilege.  *See* Debtor's App. A-733 (*id.* at 19:17-20) ("The

minute the Chapter 11 trustee was appointed, the Chapter 11 trustee steps into the

shoes of Mr. Kwok.  So the chapter 11 trustee has the privilege of Mr. Kwok in

[the UBS Litigation]"); Debtor's App. A-735 (*id.* at 21:2-4) ("Mr. Despins stepped

into the shoes of the debtor when he became the Chapter 11 Trustee.  There's well

settled case law on that, Attorney Henzy."); Debtor's App. A-787 (*id.* at 73:20-22,

24-25) ("[A]s soon as the order appointing the trustee was approved, …

Mr. Despins became Mr. Kwok. … Mr. Despins has stepped into all of those

rights.").  Therefore, ***waiver*** of privilege was not at issue.  As the Bankruptcy

Court explained, "the letter doesn't say that [the Debtor] is waiving his privilege.

In fact, it says that any waiver of the privilege is limited to the provision of this

information to the trustee.  That's what it says."  Debtor's App. A-724 (*Id.*

at 10:17-20).

The record from the August 4 Hearing also reflects that the Trustee did not

prepare the Turnover Letter in isolation but, rather, worked closely with UK

Counsel.  *See* Debtor's App. A-721 (*id.* at 7:16-24) ("There were a lot of back and

forth between me and counsel … for the [D]ebtor in that UBS action. … And at the

end of the day, I said, look, why don't you just draft a letter that you would be

comfortable receiving from Mr. Kwok that would allow you to … give me an

update on the merits of the claims. … And eventually [UK Counsel] did that.");

9

Debtor's App. A-722 (*id.* at 8:8-11) ("And so we took her letter with some minor

changes and basically that's the letter that we're now asking the [Bankruptcy]

Court to direct the [D]ebtor to send to her that basically says give [the Trustee] full

access [to the UBS Litigation case file]."); Debtor's App. A-727 (*id.* at 13:7-11)

("And that letter basically, that she marked up, says that if she gets the letter she

will … give me the privileged information.  As to what?  As to the merits of the

litigation.").[9]

## VI.    Order Granting Governance Motion

On August 10, 2022, the Bankruptcy Court overruled the Debtor's objection

and issued the Governance Order granting the Governance Motion.  The

Governance Order provides broad confirmation of the Trustee's ownership of and

authority over the Debtor's economic and corporate governance rights.  It also

directed the Debtor to "surrender to the Trustee all property of the estate and any

---

[9]     In the interest of full disclosure, even though the Turnover Letter was prepared in close coordination with UK Counsel, UK Counsel informed the Trustee after the August 4 Hearing that "[i]f any waiver of Mr Kwok's privilege is ordered, that does not mean that such a letter will have effect under English law."  Trustee's App. A-654 (August 5, 2022 email from the Chapter 11 Trustee to the Chambers of the Hon. Julie A. Manning regarding further revised proposed order).  To be clear, and as explained below, the Trustee is ***not*** seeking to waive any privilege that the Debtor may hold, and is seeking only access to relevant information held by UK Counsel relating to the UBS Litigation.  In any event, UK Counsel's position was perplexing, to say the least, as the Trustee had made clear to UK Counsel that he would be seeking court approval of the Turnover Letter over the objection of the Debtor.  The Trustee advised the Bankruptcy Court of these developments by email, dated August 5, 2022, *i.e.*, before the Bankruptcy Court entered the Governance Order on August 10, 2022.  *Id.*

recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate."  Debtor's App. A-137.

Additionally, paragraph 3(b) of the Governance Order instructed the Debtor to deliver to UK Counsel the Turnover Letter.  The Turnover Letter approved by the Bankruptcy Court, and attached as Exhibit B to the Governance Order, provided the following:

> In furtherance of the foregoing, and for the avoidance of doubt, I hereby expressly authorize you to have full and complete discussions on my behalf with Mr. Despins regarding the UBS Litigation, the merits thereof, any related settlement discussions, and any other topics related to the prosecution of the UBS Litigation and to take instructions from him in relation to my claim in the UBS Litigation regardless of any attorney-client privilege, work product, or other privilege which belongs to me.  Any waiver of privilege is limited to the provision of this information to the Trustee.  ***My consent is limited to giving access to the Trustee to the extent that I am entitled and contains no wider waiver of privilege and is not consent by me to the Trustee to waive my privilege.***

(Debtor's App. A-157 (emphasis added).)

## VII.  Privileges Motion and Privileges Order

On August 22, 2022, the Trustee filed a *Motion for Entry of Order (A) Providing that Control of any Attorney-Client Privilege, Work Product Protection, and Other Privileges Related to Rule 2004 Subpoenaed Documents Passed to Trustee Upon Appointment, (B) Directing that the Debtor and Other Examinees Not Withhold Documents on Account of Such Privileges, and*

11

*(C) Granting Related Relief.*  Trustee's App. A-552 (Bankr. Dkt. No. 777; the "Privileges Motion").  The Privileges Motion requested that the Bankruptcy Court enter an order confirming that, upon the Trustee's appointment, control over any attorney-client privilege, work product protection, and other privileges relating to the assets, liabilities, financial status or administration of the estate passed to the Trustee.  The motion further sought confirmation that neither the Debtor nor any subpoena recipient may assert any such privilege or attempt to assert any such privilege controlled by the Trustee to justify withholding any documents responsive to the Trustee's requests for discovery under Bankruptcy Rule 2004.

On September 14, 2022, the Bankruptcy Court issued a consent order in connection with the Privileges Motion.  Trustee's App. A-647 (Bankr. Dkt. No. 856; the "Privileges Order").  The Privileges Order confirmed that "[t]he Trustee has exclusive control of any attorney-client privilege or work product protection that could otherwise be asserted by the Debtor or his counsel under any applicable law (including, without limitation, any interests of the Debtor in any common interest or joint defense privilege alleged to be held with other parties) … concerning (i) assets (including actual or potential causes of action) that (A) are or were held by the Debtor. …"  Trustee's App. A-648.[10]

---

[10]   The Privileges Order also specifies that "[n]othing herein shall be construed to impact, one way or another, the Debtor or the Debtor's counsel's rights, whatever they may be, to assert

*(Cont'd on next page)*

## VIII. Motion for Stay Pending Appeal

On August 17, 2022, the Debtor filed a motion for a stay pending appeal of paragraph 3(b) of the Governance Order.  Trustee's App. A-368 (Bankr. Dkt. No. 761.)  The Trustee filed his objection on August 26, 2022.  Trustee's App. A-582 (Bankr. Dkt. No. 796.)  The Bankruptcy Court took the matter under advisement after a hearing on August 30, 2022, and has not yet issued a ruling.

## SUMMARY OF ARGUMENT

The Debtor argues that the Bankruptcy Court erred in granting the Turnover Relief because the Trustee had not (according to the Debtor) filed a motion seeking the relief ordered in those provisions.  This argument is without merit.

The Debtor's opening brief focuses on the permissibility and sufficiency of oral motions.  However, this ignores that the Governance Order, including the Turnover Relief, granted the Governance Motion, which was a written, not oral, motion.  The Governance Motion explained that it was filed to (among other things) aid in the Trustee's statutory obligation to investigate, collect, and recover estate assets that may be located in a foreign jurisdiction.  Because the UBS Litigation is a specific (and potentially valuable) example of exactly the type of

---

whatever privileges the Debtor may have under the laws of the United Kingdom in the litigation styled *Kwok Ho Wan v. UBS AG,* Claim No. CL-2020-000345 (High Court of Justice Business and Property Courts of England and Wales Commercial Court)." Trustee's App. A-652.

13

asset discussed in the Governance Motion,[11] the relief granted in paragraph 3(b) and Exhibit B of the Governance Order is, therefore, directly related to the relief sought in the written Governance Motion, and, therefore, was subsumed in such requested relief.

In any event, the Debtor is incorrect because even if the Turnover Relief was insufficiently related to the Governance Motion, this relief was discussed extensively at the August 1 Hearing and the August 4 Hearing, both of which were recorded. As such, an oral motion requesting such relief ***would*** be permissible, and it would be well within the Bankruptcy Court's discretion to grant this relief.

Furthermore, the Turnover Relief granting paragraph 3(b) and Exhibit B of the Governance Order was not prejudicial to the Debtor, as the Debtor requested— and was granted—three additional days to review and object to the relief. The Debtor utilized that time to file an objection and raise new arguments in opposition to the Revised Proposed Orders. Any suggestion that Debtor was prejudiced by the Revised Proposed Orders is spurious and should be rejected.

Also wrong is the Debtor's argument that the Bankruptcy Court erred in directing the Debtor to deliver the Turnover Letter because (the Debtor asserts) the

---

[11]   That the claim underlying the UBS Litigation is an estate asset now belonging to the Trustee is undisputed. Notably, the Debtor included the UBS Litigation claim in the "My Assets" section of his declaration in support of the Chapter 11 Case. *See* Trustee's App. A-179–80, ¶ 32(a).

14

privileges relating to the documents subject to the Turnover Letter belong to the Debtor and the turnover of such documents would violate English law.  It is clear under U.S. law that any such privileges belong to, and are controlled by, the Trustee.  Equally clear is that the Trustee is allowed, under English law, to review the Debtor's privileged documents and communications associated with the UBS Litigation in order to prosecute the litigation, so long as the Trustee does not have the ability to waive the privilege—and, to reiterate, the Turnover Letter explicitly provides that the Debtor is ***not*** consenting to any such waiver.  The Trustee has never sought to waive privilege in these documents—he simply wishes to review and consider them to understand the nature and merits of the UBS Litigation, as is his right (and obligation) under both U.S. and English law.  The Turnover Letter, therefore, does nothing more than remind the Debtor that he has no right to affirmatively prevent the Trustee from reviewing these documents, and in objecting to the Turnover Letter, the Debtor is really claiming the right to interfere with the Trustee's fulfillment of his statutory obligations under the Bankruptcy Code.  For all these reasons, the Court should affirm the Governance Order.

## ARGUMENT

### I.    Relief Granted in Governance Order Aligns With, and Was Subsumed in, Relief Sought in Governance Motion and Did Not Prejudice Debtor

The Debtor's Opening Brief asserts that the Turnover Relief "is well outside the limits of and not related or connected to what is asked for in the [Governance]

15

Motion," and that the "Trustee did not state with particularity, or state at all, his asserted legal or factual basis for the [Turnover Relief], and he did not give the [Debtor] fair notice."  (Opening Brief at 20.)  It is telling that the Debtor asserts that the Trustee failed to state the grounds for the requested relief with "particularity," yet fails to cite any of the extensive case law discussing the controlling standard for a movant's obligation to do so.  The explanation for this failure, however, is clear: the Governance Motion clearly does satisfy Rule 7(b)'s particularity requirement as applied to the Turnover Relief.

Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that "[a] request for an order … shall be by written motion, unless made during a hearing," and that the "motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought."  This "particularity" requirement parallels Federal Rule of Civil Procedure 7(b), which directs that a motion "state with particularity the grounds for seeking the order."

The "particularity requirement [of Rule 7(b) and of Bankruptcy Rule 9013] is flexible and has been interpreted liberally by the courts."  *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) (quoting *Moore's Federal Practice - Civil* § 7.03 (3d ed. 2006)).  This "particularity" requirement "is meant to give notice [] to the court and the opposing party and to provide the opposing party an opportunity to respond."  *In re Salvatore*, 586 B.R. 371, 375-76 (Bankr. D.

16

Conn. 2018) (citing *Quechee Lakes* and ruling that motion to dismiss that was "lacking information in certain respects" nonetheless provided opposing party "with notice of the claims asserted in the Motion to Dismiss").

The particularity requirement "should not be applied in an overly technical fashion when the purpose behind the rule is not jeopardized." *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 983 (8th Cir. 2008) (citation omitted). Courts applying Rule 7(b) "generally consider whether any party has been prejudiced by the movant's lack of particularity and whether the court can comprehend the basis of the motion and deal with it fairly.'" *Yates v. Delano Retail Partners, LLC*, No. C 10-3073 CW, 2012 WL 2563850, at *2 (N.D. Cal. June 28, 2012) (citing 5 Wright & Miller, *Federal Practice and Procedure* § 1192.). "Motions worded very generally have been found sufficiently particular when the opposing party had notice of the specific basis for the motion." *Id.* (citing 2 James Wm. Moore, *Moore's Federal Practice* § 7.03[4][a].).

The Debtor complains that the Bankruptcy Court could not have granted the Turnover Relief. Contrary to the Debtor's arguments, however, the Turnover Relief was directly connected to the Governance Motion, which explicitly sought "to support the Trustee's investigation, collection, and recovery of other Estate assets that may be located in foreign jurisdictions." Debtor's App. A-162. Such assets located in foreign jurisdictions include claims brought by the Debtor, such as

17

the UBS Litigation, which indisputably is now under the Trustee's control.[12]  In light of the language included in the Governance Motion, there can be no serious argument that the Debtor did not have notice that the Trustee was seeking control over the UBS Litigation, or that the Bankruptcy Court did not have sufficient information to deal fairly with the Initial Motion as applied to the UBS Litigation.

Indeed, the Governance Order itself demonstrates the connection between the Governance Motion and the Turnover Relief.  The Turnover Relief is embodied in paragraph 3(b) of the Governance Order.  The earlier provisions of that same paragraph direct the Debtor to "surrender to the Trustee all property of the estate and any recorded information, including, without limitation, books, documents, records, and papers relating to property of the estate."  Debtor's App. A-203.  The UBS Litigation, is property of the estate, and "documents, records, and papers" related to the UBS Litigation are documents, records, and papers "relating to property of the estate."  *Id.*  The Turnover Relief is nothing more, and nothing less, than a specific application of that provision—a provision the Debtor does not contest.

Nor can it plausibly be argued that any alleged Rule 7(b) deficiency in the Governance Motion (of which there was none) prejudiced the Debtor.  Not only

---

[12]   *See* Trustee's App. A-179–80, Debtor's Declaration ¶ 32(a) (listing the UBS Litigation claim in the "My Assets" section).

was the motion itself, as originally filed, sufficient notice, the Bankruptcy Court

inarguably cured any alleged lack of particularly by giving the Debtor three

additional days to respond to the specific application of the Governance Motion to

control of the UBS Litigation and the Trustee's related request that the Bankruptcy

Court direct the Debtor send the Turnover Letter to UK Counsel.  Moreover, the

Turnover Letter was not a surprise to the Debtor (or to UK Counsel).

Especially in light of the flexible standard and liberal interpretation of

Rule 7(b), these facts demonstrate that the Bankruptcy Court was well within its

discretion to grant the Turnover Relief embodied in paragraph 3(b) and Exhibit B of

the Governance Order.

## II.    Alternatively, Bankruptcy Court Had Discretion to Grant Governance Order as Ruling on Oral Motion at a Recorded Hearing

Alternatively, even if the Turnover Relief was not related to the Governance

Motion (it was), because all discussions relating to the Governance Motion took

place during recorded proceedings, an oral motion for such relief would be

permissible.  Bankruptcy Rule 9013 expressly permits oral motions, so long as the

proceeding in which such motions are made is recorded.  *See* Fed. R. Bank.

Proc. 9013 ("A request for an order … shall be by written motion, unless made

during a hearing."); *see also United States v. Vulpis*, 961 F.2d 368, 371

(2d Cir. 1992) ("Fed. R. Civ. P. 7(b)(1) expressly contemplates that a motion may

be made orally during a hearing.").

19

While the Debtor's Opening Brief cites (older or out-of-circuit) cases on the limitations of oral motions, these cases are inapposite.  The Debtor relies on cases that (i) limited oral motions to motions incidental to the hearing (such as motions to exclude or strike evidence) or (ii) did not allow oral motions entirely unrelated to the matter on hand at the scheduled hearing.  However, this ignores that an oral motion that is related to the matter on hand is permissible even if it is a substantive, and dispositive, motion.

The decision *In re Sandra Cotton, Inc.*, 99 B.R. 197, 199 (W.D.N.Y. 1989), *aff'd sub nom. Bank of New York v. Cotton*, 909 F.2d 1474  (2d Cir. 1990) ("*Cotton*") is instructive.  In that case, the appellants argued "the oral motion for judgment on the pleadings made the day of trial deprived them of the requisite written notice of such motion."  *Cotton*, 99 B.R. at 199.  Rejecting that argument, the court explained that "[o]ral motions are not precluded by the Federal Rules of Civil Procedure as long as they are made at a hearing where the proceedings are recorded.  This Court finds that the making of and the entertaining of the oral motion made on behalf of the Bank was neither improper nor an abuse of Judge Creahan's discretion."  *Id.* (internal citations omitted).

The relevant criterion in the Second Circuit is whether parties were properly on notice of the relief requested in the oral motion, a factor determined by the connection between the oral motion and the hearing in which is was raised.  *See*

20

*Cotton*, 99 B.R. at 199 ("The surprise claimed by the appellants is not convincing inasmuch as they had appeared in Bankruptcy Court June 23, 1986 prepared to go to trial on the issue of the granting of a permanent injunction.  Clearly they cannot claim that they were ready for trial, on the one hand, and then claim that they were surprised and unprepared for a motion for judgment on the pleadings, on the other hand.").

Here, the Turnover Relief is, at the very least, related to the issues raised in the Governance Motion: as discussed above, it is simply an application of the general turnover, corporate governance, and control of estate assets (including, specifically, foreign assets) sought in that motion.  As such, the Debtor was, or should have been, prepared to discuss any estate asset that, according to the Debtor, should not be subject to the Trustee's control.

Thus, it would have been within the Bankruptcy Court's discretion to grant the Turnover Relief at the original hearing, *i.e.*, the August 1 Hearing.  And it certainly was not an abuse of the Bankruptcy Court's discretion to grant the Debtor an additional three days and to hold—at the Debtor's request—an additional hearing before issuing the Governance Order.  Indeed, at the August 4 Hearing, counsel for the Debtor not only raised extensive arguments in connection with the Revised Proposed Orders, but in doing so pointed the Bankruptcy Court to both case law he had already included for this purpose in his objection and to two new

21

cases he prepared for the hearing and wished to bring to the Bankruptcy Court's attention.  Debtor's App. A-729–730 (Aug. 4 Hearing Tr. at 15:3-16:20.)  Thus, the Debtor was in no way prejudiced by the Revised Proposed Orders (which in any event fully relate to the Governance Motion).

III.   **Bankruptcy Court Did Not Err in Directing Debtor to Deliver Turnover Letter, as Trustee Controls Privileges in UBS Litigation under U.S. and English Law**

The Bankruptcy Court did not err in granting the Turnover Relief, as the Trustee owns and controls privileges in the UBS Litigation under U.S. law.  Nor was this relief erroneous under English law, under which the Trustee is entitled to review the documents subject to the Turnover Letter—and which, certainly, does not entitle the Debtor to prevent the Trustee from fulfilling his statutory duties by blocking the Trustee's review of the documents relevant to the UBS Litigation.

A.   <u>U.S Law Grants Trustee Control of Attorney-Client Privilege in UBS Litigation</u>

The Debtor's Opening Brief focuses, in detail, on the Debtor's contention that he cannot be "compelled to waive privilege."  Opening Brief at 26.  The Debtor further asserts "federal courts in this country may not compel disclosure of attorney-client privileged communications absent a knowing and informed waiver."  *Id.* at 22.  The Debtor concludes by arguing that the Bankruptcy Code does not create "an exception to the general principles protecting applicable

privileges," and that section 521 of the Bankruptcy Code does not compel a waiver of the debtor's privilege. *Id.* at 24-26.

These arguments demonstrate that the Debtor wholly misunderstands privilege law as applicable to a trustee in a chapter 11 case. Control of a privilege is wholly different from waiver of a privilege. As described in detail in the Privileges Motion, and confirmed in the Privileges Order, to the extent it relates to assets and liabilities of the estate, the Debtor's financial conditions, and administration of the estate, control of the attorney-client privilege passes to a chapter 11 trustee upon his appointment. The Debtor's focus on "waiver" and his complaints that he is being "compelled to waive [his] privilege," *id.*, are, therefore, irrelevant. As a matter of U.S. law, the Trustee is now the owner of any privileges in connection with the UBS Litigation, so there would be no waiver at all. Rather, the communications and privileges belong to the Trustee, as it is undisputed that the Trustee is now the owner of the Debtor's claims in that litigation.

The controlling law in this regard is the Supreme Court's decision in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) ("*Weintraub*"). *Weintraub* addressed whether, upon appointment of a trustee, control of a corporation's attorney-client privilege passes to the trustee, or remains with the debtor's management. The Supreme Court held that the trustee steps into the shoes of the corporate debtor for the purposes of controlling attorney-client

23

privilege just as the trustee does for management of the corporate debtor more generally. *See id.* at 353–54.  In reaching this decision, the Supreme Court made clear that the issue was whether ***control*** of the privilege passes to a trustee in bankruptcy—not whether the trustee gains access to privileged documents or communications through an exception to, or waiver of, the privilege.

Although *Weintraub* dealt specifically with corporate debtors, a number of lower courts have since addressed whether the privilege also passes to the trustee in an individual debtor case.  A significant majority of the courts addressing this question have employed a "balancing test" that considers whether the privilege at issue relates most closely to a trustee's rights, obligations and allocation of responsibility under the Bankruptcy Code, or whether the privilege primarily concerns the debtor's interests as an individual.  *See, e.g.*, *In re Bame*, 251 B.R. 367, 375 (Bankr. D. Minn. 2000) (characterizing the test of whether "individual debtor's attorney-client privilege as to prepetition communications does transfer to the trustee" as turning on "when on balance the trustee's duties to maximize the value of the estate outweigh the policies underlying the attorney-client privilege and the harm to the debtor of disclosure."); *In re Foster*, 188 F.3d 1259, 1267 (10th Cir. 1999) (remanding decision back to bankruptcy court to apply balancing test).  Therefore, ***any concern by the Debtor that any privilege is***

*being waived or regarding 'compelled disclosure' is inapposite because, no*

*privilege is waived when control of the privilege passes to the Trustee.*

Courts applying the balancing test routinely find the trustee controls the privilege with regard to documents that relate to assets of the estate, its financial status or to the administration of the estate. *See, e.g.*, *In re Bazemore*, 216 B.R. 1020, 1024 (Bankr. S.D. Ga. 1998) (finding that trustee controlled, and held right to waive, attorney client privilege where it sought documents to determine if estate held cause of action); *Bame*, 251 B.R. at 377 (finding in favor of trustee's request to control privilege of individual debtor when seeking discovery of documents in order to recover assets); *In re Horvath*, No. 13-34137, 2015 WL 2195060, at *6 (Bankr. N.D. Ohio May 7, 2015) (discovery related to claims on schedule of assets permissible from individual debtor because trustee sought to potentially increase value of debtor's estate, and finding that "the Trustee is entitled to waive Debtor's attorney-client privilege" and holding that "the sole purpose of the Trustee's inquiry is to augment her ability to administer the estate with respect to those assets and to potentially increase the value of Debtor's estate to his creditors").

Application of the balancing test to the UBS Litigation weighs heavily in favor of control of the privilege passing to the Trustee. The UBS Litigation could, if meritorious, represent a substantial potential asset of the Debtor's estate, claiming damages of approximately $495 million dollars. As such, to effectively fulfill his

25

obligations under the Bankruptcy Code to maximize this asset for the benefit of the

estate and its creditors, the Trustee must be provided access to relevant information

held by UK Counsel relating to the UBS Litigation.  Indeed, it would mean nothing

for the Trustee to "own" the claims in the litigation if information he needs to

manage and direct counsel in that litigation is withheld from him.

  The Debtor's arguments fail at the threshold because they are premised on

the assumption that the Debtor continues to control the privilege, and the Debtor

does not attempt to argue otherwise.  Indeed, the Debtor's Opening Brief cites

*Weintraub* only in passing in a string cite, and makes no reference to the balancing

test developed by courts applying *Weintraub*.[13]  Opening Brief at 25.  The Debtor

has provided no basis to disturb the Bankruptcy Court's ruling—consistent with

well-settled and non-controversial law—that control of any privileges relating to

---

[13] The balancing test considers whether the debtor's personal interests, such as exposure to
criminal liability, are sufficient to justify the debtor's continued control of the privilege.
While the Debtor does not discuss the balancing test, those factors also weigh in favor of
control of the privilege passing to the Trustee, as there is no reason to believe that any
privileged information in the possession of UK Counsel relates to the Debtor as an individual
or could harm his individual interest.  First, the UBS Litigation concerns a claim **brought by
the Debtor** that UBS provided him with faulty investment advice.  This is not a subject
matter implicating the types of concerns that courts have considered as a basis for not
transferring control of privileges to a trustee.  If the Debtor had concerns that his claims in
the UBS Litigation create criminal exposure for him (he has professed no such concerns), it
is implausible that he would have volunteered to make such issues public by filing a lawsuit.
Second, and most tellingly, nowhere does the Debtor explain, even in the broadest of terms,
what allegedly privileged materials in the UBS Litigation could result in personal harm if
disclosed.

the UBS Litigation has passed to the Trustee.  This Court should, therefore,

confirm the Bankruptcy Court's ruling.

> **B.**     Turnover Letter Does Not Waive Privilege and is Consistent with English Law

The Debtor next argues that, in addition to his (incorrect) assertions

regarding U.S. law and privilege in a bankruptcy case, the Turnover Relief should

be overturned because it "forc[es] the Debtor to waive any privileges that he may

still possess under U.K. law."  Opening Brief at 27.  The Turnover Letter does no

such thing.  To the contrary, and entirely consistent with English law, the Turnover

Letter preserves any privilege the Debtor may retain under English law, and

ensures that the Trustee will do the same.  The only effect of the Turnover Letter is

to ensure that the Trustee himself is able to review the applicable documents, as is

his right (and obligation) under both U.S. and English law.[14]

The Turnover Letter states, in relevant part:

> I hereby expressly authorize you to have full and complete
> discussions on my behalf with Mr. Despins regarding the
> UBS Litigation, the merits thereof, any related settlement
> discussions, and any other topics related to the prosecution of
> the UBS Litigation and to take instructions from him in
> relation to my claim in the UBS Litigation regardless of any
> attorney-client privilege, work-product, or other privilege

---

[14]   Because the Turnover Letter does nothing more than ensure that the Trustee can review the UBS Litigation documents, any possible distinction between U.S. and U.K. law, in which English law (as discussed below) allows the Trustee to review privileged documents, while U.S. law (pursuant to *Weintraub*) goes farther and transfers control of the privilege, has no bearing on the instant appeal.  That being said, and as demonstrated above, the Debtor is also wrong in his assertions that, under U.S. law, he continues to control the privilege.

> which belongs to me.  Any waiver of privilege is limited to
> the provision of this information to the Trustee.  My consent
> is limited to giving access to the Trustee ***to the extent that I
> am entitled*** and contains no wider waiver of privilege and ***is
> not consent by me to the Trustee to waive my privilege***.[15]

Debtor's App. A-157 (emphasis added).  Nowhere does the letter state that

providing the information to the Trustee would constitute the Debtor's waiver of

his privileges.  The Debtor nevertheless leverages his dubious assertion that a

"waiver" is occurring to claim that the Governance Order forces the Debtor to

waive privileges he possesses under English law.  Even assuming for the sake of

argument that the Debtor continues to own a privilege, he is wrong about the law.

The Turnover Letter, which, as noted above, was prepared in coordination with UK

Counsel, is fully consistent with English law.

Under English law, the Trustee is obligated to take possession of all of the

Debtor's books, papers and records, specifically including privileged documents,

which will include communications associated with the UBS Litigation, although

the Trustee does not have the ability to waive the privilege.  *See* Debtor's App. A-

506 (*Avonwick Holdings Limited v. Shlosberg*, [2016] EWCA (Civ) 1138, ¶¶ 69-71

(Court of Appeal, Civil Division, 2016)) (holding that it was necessarily implicit in

section 311 (1) of the Insolvency Act 1986 that a trustee can take possession of

---

[15]  Notably, the letter does not assume that the Debtor owns any privileges, nor that he has any
commensurate right to waive them.

privileged records relating to the bankrupt's estate or affairs for the overriding function of investigation of the bankrupt's affairs and distributing potential assets to the bankrupt's estate, as long as the trustee's use of the privileged documents did not amount to a waiver of privilege as to any third parties); *see also* Debtor's App. A-545 (*Leeds v. Lemos*, [2017] EWHC 1825 (Ch), ¶ 260 (Chancery Division, 2017)) ("There can be no dispute that the trustees are entitled to see the privileged information and use it for the purpose of carrying out their statutory functions, provided, as the Court of Appeal has held in *Avonwick*, that they do not waive legal professional privilege without the bankrupt's consent.").  Notably, these cases do not require consent of the Debtor before the Trustee may review any privileged information.

Moreover, in *Avonwick*, the bankruptcy trustees sought to waive the debtor's privilege for the benefit of Avonwick, a third party, and largest creditor of the debtor's estate, in a conspiracy proceeding that Avonwick brought against multiple defendants including the debtor.  *See Avonwick* ¶¶ 3, 21.  Similarly, in *Leeds*, the trustees sought to waive the debtor's privilege in a third party action brought to set aside certain transactions that the debtor entered into prior to bankruptcy.  *See Leeds* ¶¶ 10, 16, 27, 36.  Here, the Trustee is ***not*** seeking to waive any privilege for the benefit of any third party.  The Trustee has made this representation before and

reaffirms it here.  Instead, the Trustee would be reviewing the relevant information solely to control and direct the UBS Litigation.

Given that the Turnover Letter explicitly states that the Debtor is ***not*** consenting to the Trustee's waiver of his privilege—and the Trustee is not claiming the Turnover Letter gives him the ability to do so—any argument that English law prohibits a bankruptcy trustee from waiving a debtor's privilege is of no moment.  *See* Debtor's App. A-157 (Governance Order, Exhibit B.)

The Debtor's Opening Brief ignores all this and contains no actual analysis of English law.  The Debtor, instead, asserts only that "[p]rivilege issues connected to [the UBS Litigation] should be determined by the U.K. Court under U.K. law." Opening Brief at 27.  However, U.S. courts frequently decide issues of foreign law. Indeed, the "ability of U.S. courts to apply foreign law is especially relevant to U.K. law, which is generally amenable to interpretation by a U.S. court."  *In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 350 (Bankr. S.D.N.Y. 2016) (citation omitted); *Kim v. Co-op. Centrale Raiffeisen-Boerenleenbank*, 364 F. Supp. 2d 346, 349 (S.D.N.Y. 2005) ("Pursuant to Federal Rule of Civil Procedure 44.1, it is the Court's function to determine foreign law, and the Court is given wide latitude in making that determination"); *Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping*, 603 F. Supp. 801, 806 (S.D.N.Y. 1985) ("The courts of this country are capable of applying foreign law

whenever necessary.").[16]  In any event, this Debtor is before the Connecticut

Bankruptcy Court in his voluntary Chapter 11 Case and that court can direct the

conduct of the debtor with respect to his assets and property regardless of "whether

that property is located in the United States or a foreign jurisdiction."  *In re*

*Arcapita Bank B.S.C.(c)*, 575 B.R. 229, 250–51 (Bankr. S.D.N.Y. 2017), *aff'd sub*

*nom. In re Arcapita Bank B.S.C.(C)*, 640 B.R. 604 (S.D.N.Y. 2022).  *See* 28

U.S.C.A. § 1334(e) ("The district court in which a case under title 11 is

commenced or is pending shall have exclusive jurisdiction-- (1) *of all the property,*

*wherever located, of the debtor* as of the commencement of such case, and of

property of the estate") (emphasis added); 11 U.S.C.A. § 541 (West) ("a debtor's]

---

[16]  The Debtor also did not mention that, on October 21, 2022, the Trustee filed an application (the "Recognition Application") requesting in the High Court of Justice, Business and Property Courts of England and Wales, Insolvency and Companies Court (ChD) (the "UK Court") entry of an order that would, among other things, (a) recognize the Chapter 11 Case as a foreign main proceeding, (b) declare that all powers normally available to a trustee in bankruptcy under English law be made available to the Trustee, and (c) direct UK Counsel to deliver all documents in its possession related to the UBS Litigation to the Trustee.  Trustee's App. A-657-59.  Even though the Recognition Application seeks, among other things, documents from Harcus Parker related to the UBS Litigation, this does not change the analysis as to whether the Bankruptcy Court can also require the Debtor to send the Turnover Letter to UK counsel.  One of the co-plaintiffs in the UBS Litigation (Ace Decade Holdings Limited), which is beneficially owned by the Debtor (*see* Bankr. Dkt. No. 1110), has objected to the relief in the Recognition Application to the extent that it would require UK Counsel to turn over documents over which it asserts joint privilege with the Debtor.  Whatever the rights of Ace Decade Holdings Limited may be in this regard is a matter for the UK Court, and, to be clear, the Trustee is not seeking a ruling from the Bankruptcy Court or this Court as to the rights of Ace Decade Holdings Limited.  As part of the Recognition Application, the Trustee also undertook to the UK Court that he would not seek to waive any privilege in any document disclosed to him by virtue of the Recognition Application without first applying to the English Court to do so (and would not circumvent this undertaking by seeking an order from a U.S. Court in that regard).  As of the time of filing of this brief, the UK Court has not yet issued a ruling on the Recognition Application.

31

estate is comprised of all the following property, **_wherever located_** and by whomever held . . . ."); *see also In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 610 (Bankr. S.D.N.Y. 2017) (citing section 541 and 1334 in support of proposition that "the term 'property of the estate' includes property 'wherever located, and by whomever held' that was property of the debtor at the commencement of the case," and concluding "[t]hus 'property of the estate' extends to property located worldwide").

## STATEMENT REGARDING ORAL ARGUMENT

The Trustee respectfully requests that the Court schedule oral argument on this appeal.

[*Remainder of page left intentionally blank.*]

32

## **CONCLUSION**

The Trustee respectfully requests that the Court reject the Debtor's appeal and affirm the Bankruptcy Court's Governance Order, including, specifically, paragraph 3(b) and Exhibit B thereto.


Dated: January 12, 2023

Respectfully submitted,


| | |
|---|---|
| | /s/ Patrick R. Linsey |
| Nicholas A. Bassett (*pro hac vice*) | Douglas S. Skalka (ct00616) |
| PAUL HASTINGS LLP | Patrick R. Linsey (ct29437) |
| 2050 M Street NW | NEUBERT, PEPE & MONTEITH, P.C. |
| Washington, D.C., 20036 | 195 Church Street, 13th Floor |
| (202) 551-1902 | New Haven, Connecticut 06510 |
| nicholasbassett@paulhastings.com | (203) 781-2847 |
| | dskalka@npmlaw.com |
| *and* | plinsey@npmlaw.com |
| | |
| Luc A. Despins (*pro hac vice*) | |
| Avram E. Luft (*pro hac vice*) | |
| PAUL Hastings LLP | |
| 200 Park Avenue | |
| New York, New York 10166 | |
| (212) 318-6079 | |
| lucdespins@paulhastings.com | |
| aviluft@paulhastings.com | |
| | |
| *Counsel for the Trustee* | |

33

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the page limit of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i) because, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g), this brief contains 8,190 words.

2.      This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

Dated: January 12, 2023                    */s/ Patrick R. Linsey*
                                           Patrick R. Linsey

                                           *Counsel for the Trustee*

34

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on January 12, 2023, a copy of the foregoing Brief of

the Appellee Trustee and the appendix thereto was filed electronically.  Notice of

this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system or by mail to anyone unable to accept electronic filing as indicated on

the Notice of Electronic Filing. Parties may access this filing through the Court's

CM/ECF System.

*/s/ Patrick R. Linsey*

Patrick R. Linsey

*Counsel for the Trustee*
